Mark GREBNER, d/b/a Practical Political Consulting, Plaintiff-Appellant,†

v.

Sharon SCHIEBEL, in her official capacity as Polk County Clerk, Defendant-Respondent.

Court of Appeals

*No. 00–1549–FT. Submitted on briefs October 20, 2000.—Decided December 17, 2000.*

## 2001 WI App 17

(Also reported in 624 N.W.2d 892.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark E. Sostarich* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Beverly Wickstrom* of *Misfeldt, Richie, Wickstrom & Wachs* of Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1.   CANE, C.J.   Mark Grebner, d/b/a Practical Political Consulting, appeals from a judgment dismissing his complaint seeking a mandamus order to require the custodian of public records to permit him to make copies of voting records on his own portable photocopy machine.[1] Because it is the custodian of public records, not the requester, who has the option of determining how these records are copied, the judgment is affirmed.

¶ 2.   The relevant facts are undisputed. Grebner does business as Practical Political Consulting, which provides voter histories to candidates, political parties and others involved in the electoral process. In 1999, Grebner dispatched employees throughout Wisconsin to obtain polling data from the various county clerks' offices. These employees were provided with a portable

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17 (1997–98).

photocopying machine and supplies so that they could make immediate photocopies of pertinent records.

¶ 3. One of these offices was the Polk County clerk's office where Sharon Schiebel served as the clerk. Curt Raisig, an employee of Grebner, went to the Polk County clerk's office, carrying with him a small portable photocopying machine and necessary supplies for the machine. He requested and was granted access to the poll lists for all elections held during the past four years. He also indicated to the clerk that he intended to identify the necessary documents and then photocopy them using the portable photocopying machine that he had with him and available for inspection. Grebner stresses that Raisig never asked the clerk to make copies of the documents for him.

¶ 4. Schiebel informed Raisig that he would not be allowed to make copies with his photocopying machine. Instead, she offered to assign a person from her office to photocopy the documents for a charge. Raisig then left and reported what happened to Grebner. Grebner contacted Schiebel by telephone and emphasized that he was not asking the clerk to copy the records for him. Instead, he simply wanted access to the records and intended to make his own copies with his portable photocopying machine. The clerk again refused to grant him permission to photocopy documents using his own photocopy machine.

¶ 5. In a July 10, 1999, letter, Grebner confirmed his earlier request and demanded that the clerk's office allow his staff access to the poll records, including the right to make copies on the portable photocopying machine. This request was again denied through a letter from the county's corporation counsel on behalf of the County clerk.

554

¶ 6. In response, Grebner inquired as to whether he could use a digital camera, instead of the photocopying machine, to photograph selected pages from the poll list. He also asked if he could use a laptop computer to immediately transcribe certain information from these documents into his company's database. The clerk's office, responding through the county's corporation counsel, said that Grebner's staff could use the digital camera and the laptop to copy the requested documents as long as it would not damage the documents. Instead of using the camera or computer, Grebner filed suit demanding that he be allowed to copy these documents with his own photocopying machine.

¶ 7. Both sides agreed that the trial court could resolve the issue on summary judgment. The trial court granted judgment to the county, concluding that WIS. STAT. § 19.35(1)(b) gives the clerk the option of allowing the requester to copy the records with the requester's own equipment or providing the requester with a copy of the records. We agree.

¶ 8. To resolve this issue, we must interpret WIS. STAT. § 19.35(1)(b). Statutory interpretation is a question of law and is subject to our de novo review. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315 (Ct. App. 1997). The goal of statutory interpretation is to ascertain the intent of the legislature, and to discern this intent we look first to the plain language of the statute. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563 (1997). If the statute's language is clear, we look no further and simply apply the statute to the facts and circumstances before us. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996).

¶ 9. In light of the undisputed facts, we initially clarify what this case is not about. It is not about whether Grebner was denied access to the public records. Nor is it about whether Grebner was denied the right to copy the records. In both instances, it is undisputed that Grebner was granted access to the poll lists and had permission to copy the records with his own digital camera or transcribe the information with his laptop computer. Therefore, the sole issue is whether the requester can select his or her own equipment to copy the public records without the clerk's permission. The answer is no.

¶ 10. WISCONSIN STAT. § 19.35(1)(b) provides:

**Access to records; fees.**

. . . .

(b) Except as otherwise provided by law, any requester has a right to inspect a record and to make or receive a copy of a record which appears in written form. If a requester appears personally to request a copy of a record, the authority having custody of the record may, at its option, permit the requester to photocopy the record or provide the requester with a copy substantially as readable as the original.

¶ 11. Grebner does not argue that this statute is ambiguous. Instead, he stresses that the statute does not apply in this instance because he did not request a copy of a record. He argues that under the first sentence of this subsection he has an undeniable right to make a copy of a record which appears in written form. However, his argument is an overly restrictive reading of the statute and ignores long-standing rules of statutory construction. When interpreting a statute, it must be read so every portion of the statute is given mean-

ing. *Northwest Props. v. Outagamie County*, 223 Wis. 2d 483, 489, 589 N.W.2d 683 (Ct. App. 1998). The two sentences comprising subsec. (b) must be read together and harmonized. *See State v. Schaller*, 70 Wis. 2d 107, 110, 233 N.W.2d 416 (1975).

¶ 12.   We agree with the County clerk that the only reasonable reading of the subsection is that a requester may make or receive a copy of the record subject to the terms and conditions set forth in the second sentence of the subsection. Under the second sentence, the custodian is given the option to either allow the requester to make a copy of the record or for the custodian to make a copy of the record. Importantly, the statute gives the custodian, not the requester, the option to choose how a record will be copied.

¶ 13.   As the trial court correctly noted, this interpretation satisfies an important public policy concern. Schiebel, like other record custodians, has important administrative obligations. Like other custodians, the county clerks must keep the records in their possession in good condition and have them readily accessible. The custodians are obligated to preserve and protect the records under their custody while at the same time allowing the public the right to access and copy these documents.[2] The legislature was obviously aware of

[2] For example, WIS. STAT. § 6.46 provides a specific obligation for municipal clerks to preserve poll lists. This statute provides:

> **Poll lists; copying.** Poll lists shall be preserved by the municipal clerk until destruction or other disposition is authorized under s. 7.23, and shall be open to public inspection. The municipal clerk shall furnish upon request to each candidate who has filed nomination papers for an office which represents at least part of the municipality one copy of the current poll list for those areas for

these two public interests and struck a balance by giving the custodian the option to determine how the records are copied. WISCONSIN STAT. § 19.35 does not require the custodian to articulate or explain the reasons for his or her decision. Thus, the clerk has the option to not permit the requester to use his or her own equipment without entering into a debate over the adequacy of the requester's equipment or the likelihood that it will destroy the document.

¶ 14.  Here, Schiebel exercised the option given to her by the legislature and was not required to allow the requester to dictate what equipment would be used to make the copies. In response to Grebner's request, she made reasonable arrangements to allow him to copy the poll lists with the digital camera, transcribe information into his laptop computer, or have copies made for him. She complied with the mandates of WIS. STAT. § 19.35 in that Grebner was allowed access to the public records and the right to obtain copies, either by using his own camera or having the clerk make copies. Because it is the custodian, not the requester, who has the option to determine how the public records are copied, the judgment is affirmed.

*By the Court.*—Judgment affirmed.

which he or she is a candidate for a fee not to exceed the cost of reproduction. If a copying machine is not accessible, the clerk shall remove the lists from the office for the purposes of copying, and return them immediately thereafter.