PER CURIAM.
¶1 Joseph Grider, Kayden Sympson, Kendra Sympson, and the personal representative of the estate of Cassondra Sympson (collectively, the Sympsons) appeal orders of the circuit court granting summary judgment in favor of American Family Mutual Insurance Company and Empire Fire and Marine Insurance Company. The Sympsons were injured when their vehicle was involved in an accident with a vehicle driven by Johnquayl Bell. Bell's vehicle had been rented by Nicholas Cade, who had given Bell permission to drive the vehicle. At the time of the accident, Cade was insured under separate liability policies issued by American Family and Empire. The circuit court determined that the American Family and Empire policies did not provide coverage for the Sympsons' claims. The Sympsons raise various arguments as to why summary judgment is not appropriate. For the reasons discussed below, we affirm in part and reverse in part and remand for further proceedings.
BACKGROUND
¶2 On April 28, 2013, an automobile collision occurred in Beloit between a vehicle occupied by the Sympsons, and a vehicle driven by Bell and also occupied by Chatavier Bell-Johnson. Cassondra, Joseph, Kayden, and Kendra each sustained injuries in the accident, and Cassondra later died from her injuries.
¶3 The vehicle driven by Bell had been rented from Enterprise Rent-A-Car Company-Midwest, LLC, in Rockford, Illinois, by Cade. Cade, who was the only authorized driver for the vehicle under the terms of the rental agreement, gave Bell permission to drive the vehicle. At the time of the accident, Cade was the insured under a motor vehicle liability insurance policy issued in Illinois by American Family. When Cade rented the vehicle, he also purchased, through Enterprise, an optional supplemental liability policy issued in Illinois by Empire.
¶4 It is undisputed that Cade rented the Enterprise vehicle with the intention of letting Bell and Bell-Johnson use it, but there was no allegation that Cade verbally lied to Enterprise about that intent when renting the vehicle. After renting the vehicle, Cade immediately drove it a short distance and gave possession of the vehicle to Bell and Bell-Johnson.
¶5 In April 2015, before the Sympsons commenced any legal action, American Family brought the present declaratory judgment action to determine whether the American Family policy provided coverage for any potential claims the Sympsons might have. The Sympsons, who were named as defendants in the declaratory action, counterclaimed against American Family and cross-claimed against Cade, Bell, and Bell-Johnson. The Sympsons alleged, in part, that: (1) Bell was negligent in his operation of the Enterprise rental vehicle at the time of the accident; and (2) Cade negligently entrusted the vehicle to Bell and Bell-Johnson before the accident.
¶6 The Sympsons also asserted a third-party claim against Empire. The Sympsons sought an order declaring that Bell was a permissive driver of the Enterprise vehicle at the time of the accident and that the American Family and Empire policies provide coverage for the Sympsons' claims against Cade, Bell, and Bell-Johnson. After filing its answer to the Sympsons' third-party complaint, Empire filed a "claim for declaratory judgment" in which it requested a declaration by the circuit court that Empire does not provide coverage for the accident.
¶7 American Family moved the circuit court for summary judgment, asserting that the American Family policy does not provide coverage for the Sympsons' claims. The Sympsons conceded that their direct negligence claim against Bell is not covered under the American Family policy, but argued that the American Family policy does provide coverage for their negligent entrustment claims. The circuit court granted summary judgment in favor of American Family.
¶8 Empire also moved the circuit court for summary judgment. Empire asserted that the Empire policy does not provide coverage for the Sympsons' claims because the Empire policy excludes coverage for any damage resulting from the non-permissible use of the Enterprise vehicle. The circuit court denied Empire's motion, concluding that, under Illinois law, an exclusion for unauthorized drivers in the Empire policy is unenforceable.
¶9 Following discovery, the Sympsons moved for summary judgment against Empire on the issue of whether the Empire policy provides liability coverage for their claims against Cade, Bell, and Bell-Johnson. Empire opposed the Sympsons' motion and moved the circuit court a second time for summary judgment. This time, Empire argued that, based on fraud (which was a defense that Enterprise had not affirmatively asserted in its responsive pleadings), Enterprise can rescind its rental contract with Cade, and by extension the Empire policy.[1] The circuit court denied the Sympsons' motion for summary judgment and granted Empire's motion.
¶10 The Sympsons appeal the orders granting summary judgment in favor of American Family and Empire. We address additional facts below where necessary.
DISCUSSION
¶11 Summarized, the Sympsons contend that neither American Family nor Empire was entitled to summary judgment dismissing the claims against the insurers. The Sympsons argue that the American Family policy provides coverage for their claim that Cade negligently entrusted the Enterprise vehicle to Bell and that the Empire policy provides coverage for their negligence claim against Bell and their negligent entrustment claim against Cade.[2]
¶12 The grant or denial of summary judgment is a question of law which we review independently. Olson v. Farrar , 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1. Summary judgment is appropriate when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[3] In this case, there are no disputed material facts, we therefore must determine which party is entitled to judgment as a matter of law. See id.
¶13 To the extent that our review calls for interpretation of the American Family or Empire policies, insurance contract interpretation is a question of law that we review independently. Olson , 338 Wis. 2d 215, ¶24. In addition, resolution of the arguments on appeal require this court to determine whether Wisconsin or Illinois law applies to various issues. We review conflict of laws questions independently. Sharp v. Case Corp. , 227 Wis. 2d 1, 10, 595 N.W.2d 380 (1999).
A. The American Family Policy
¶14 The Sympsons contend that the American Family policy provides coverage for their negligent entrustment claims. The Sympsons concede that if we were to apply Wisconsin law, their negligent entrustment claim would not be covered by the American Family policy. They argue, however, that we should apply Illinois law and that, under Illinois law, there is coverage. Accordingly, we address the parties' dispute over whether to apply Wisconsin or Illinois law. This is a conflict of laws question. For the following reasons, we conclude that there is no conflict of laws and, therefore, Wisconsin law applies to both deny coverage under the American Family policy and justify summary judgment in favor of American Family.
¶15 In Wisconsin, negligent entrustment of a vehicle is not sufficient to trigger coverage under an insurance policy if the negligent operation of that vehicle is not a covered risk under that policy. Siebert v. Wisconsin Am. Mut. Ins. Co. , 2011 WI 35, ¶¶30, 40, 333 Wis. 2d 546, 797 N.W.2d 484. In Siebert , our supreme court applied "the independent concurrent cause rule," under which " "[t]he 'independent concurrent cause must provide the basis for a cause of action in and of itself and must not require the occurrence of the excluded risk to make it actionable.' " " Id. , ¶40 (quoted sources omitted). The supreme court explained that, although Wisconsin law recognizes that negligent entrustment "constitutes an independent act of negligence, that negligence is nonactionable" if there is also not an actionable act of negligence by the entrustee. Id. , ¶42.
¶16 There appears to be no dispute that the germane negligent entrustment law in Wisconsin is found in Siebert . In that case, the insured gave her boyfriend permission to use the vehicle to drive to a local food pantry in the town in which they lived. Id. , ¶7. The boyfriend instead used the vehicle to pick up multiple passengers and then drove to a party in a different town. Id. , ¶8. On the way to the party, the vehicle was involved in an accident and a number of the passengers were either injured or killed. Id. , ¶¶9-10. One of the injured passengers brought suit against the company that insured the vehicle, alleging that the insured negligently entrusted the vehicle to her boyfriend. Id. , ¶17. The policy insuring the vehicle did not provide coverage for the boyfriend's negligent operation of the vehicle. Id. , ¶5. Our supreme court concluded that the passenger's negligent entrustment claim was not covered under the policy absent coverage for the underlying act of negligence, specifically the boyfriend's alleged negligent operation of the vehicle. Id. , ¶¶5, 55. The supreme court stated:
[T]here is no coverage for [the] alleged negligent entrustment of the vehicle ... because that act is not an independent concurrent cause of [the plaintiff's] injuries. More specifically, [the] negligent entrustment could not render [the entrustor] liable for [the plaintiff's] injuries without the occurrence of an excluded risk-[the entrustee's] alleged negligent operation of the vehicle.
Id. , ¶55.
¶17 The Sympsons concede that, under the reasoning in Siebert , their negligent entrustment claim is not covered under the American Family policy. The question, then, is whether Siebert is in conflict with Illinois law. The Sympsons do not persuade us that this is a conflict.
¶18 The Sympsons assert that, while Wisconsin applies the independent concurrent cause rule, Illinois applies the "efficient-dominant proximate cause rule." They argue that under the "efficient-dominant proximate cause rule," if the first event is covered and sets into motion a chain of events that leads to a loss that first event remains covered even if a later, more immediate cause for the loss is not covered. Thus, they argue, under Illinois law, their negligent entrustment claim is covered by the American Family policy.
¶19 Conflict of laws rules set forth a multi-pronged test for determining whether we apply Wisconsin law, or the law of another jurisdiction to resolve a conflict. The threshold question is whether there exists a genuine conflict between Wisconsin law and the law of the other state. Sharp , 227 Wis. 2d at 10-11. If there is no genuine conflict, our inquiry ends and we apply Wisconsin law. Id. at 11 ; see Humana Med. Corp. v. Peyer , 155 Wis. 2d 714, 718, 456 N.W.2d 355 (1990) (applying Wisconsin law when no conflict with Wisconsin law is shown). If there is a genuine conflict, we apply the "choice-influencing considerations" set forth in Gavers v. Federal Life Ins. Co. , 118 Wis. 2d 113, 115-16, 345 N.W.2d 900 (Ct. App. 1984), to determine whether Wisconsin law or the law of the other state should be applied.
¶20 For the reasons explained below, we conclude that the Sympsons have not pointed to any legal authority establishing that there is a genuine conflict between Wisconsin and Illinois law as to coverage for their negligent entrustment claim against Cade. Because the Sympsons have not shown that a genuine conflict between Wisconsin and Illinois law exists, our inquiry ends. We apply Wisconsin law without the need to evaluate the "choice-influencing considerations."
¶21 In support of their assertion that Illinois law conflicts with Wisconsin law, the Sympsons rely exclusively on Bozek v. Erie Ins. Grp. , 46 N.E.3d 362 (Ill. App. 2015).
¶22 The Illinois Bozek case concerned the interpretation of an anti-concurrent causation clause contained in an insurance policy. Id. at 364-65. The anti-concurrent causation clause provided that if a loss resulted from any of a list of specified causes, the insurer would not pay for the loss "even if other events or happenings contributed concurrently, or in sequence, to the loss." Id. at 365. The Bozek court stated that when a question arises as to coverage where more than one cause contributed to a loss, some of which are covered and some of which are excluded under a policy, courts have generally applied one of the following four rules: (1) the "but-for or minimally sufficient causation" rule; (2) the "efficient or dominant proximate causation" rule; (3) the "immediate causation" rule; or (4) the most narrow rule, which excludes coverage if any excluded cause contributes to the loss. Id. at 368. The court stated that "it appears that Illinois favors the efficient-or-dominate-or-proximate-cause rule," but that under Illinois law, insurance policies may provide for the application of a more narrow rule by including anti-concurrent causation clauses, which the insurer had done in Bozek . Id. at 368-69. The Bozek court concluded that the anti-concurrent clause precluded coverage for the loss at issue, however, before doing so, the Bozek court provided background information on these types of clauses. See id. at 368-69, 372.
¶23 Unlike Bozek , the present case does not concern whether multiple causes for a loss are actionable. The issue here is whether the Sympsons' claims for negligent entrustment are actionable if the negligence of the entrustee, in this case Bell, is not a covered risk under the policy. Bozek provides no guidance on that issue and, therefore, we conclude that the only Illinois law that the Sympsons rely on, the law in Bozk , does not conflict with the applicable Wisconsin law set forth in Siebert .
¶24 Because the Sympsons do not point this court to any other allegedly conflicting Illinois negligent entrustment law, and because American Family does not point to any Illinois law that matches Wisconsin law in this respect, the question arises whether an absence of Illinois law creates a conflict within the meaning of Sharp and other Wisconsin cases addressing conflict of laws. The parties do not address this topic, but we will assume, without deciding, that our case law requires an affirmative conflict for two reasons. First, on its face our law requires a "conflict" and that term normally means that two things are at odds. Second, the Sympsons are the appellants and they are obliged to persuade us that the circuit court erred.
¶25 In the absence of a conflict of laws, and in light of the Sympsons' concession that under Wisconsin law, their negligent entrustment claim is not covered, we conclude that summary judgment in favor of American Family was proper.
B. The Empire Policy
¶26 Empire contends that the circuit court properly granted its motion for summary judgment on the ground that the Empire policy should be rescinded because the rental of the Enterprise vehicle had been procured through fraud. Relying on WIS. STAT. §§ 802.02(3) and 802.06(2)(a), the Sympsons argued before the circuit court and now in this court that Empire forfeited its fraud defense because Empire failed to raise fraud as affirmative defenses in its responsive pleadings. After briefing was complete, our supreme court interpreted these same statutory provisions in the same way that the Sympsons have argued they should be interpreted. See Maple Grove Ctry. Club, Inc. v. Maple Grove Estates Sanitary Dist. , 2019 WI 43, 386 Wis. 2d 425, 926 N.W.2d 184.
¶27 Accordingly, we first discuss the effect of Maple Grove on the parties' appellate brief arguments and then address a letter that Empire sent us requesting additional briefing in light of Maple Grove .
¶28 In its appellate briefing, Empire relied on our decision in Lentz v. Young , 195 Wis. 2d 457, 536 N.W.2d 451 (Ct. App. 1995), to argue that Empire timely raised its "fraud defense ... in a pre-trial motion." Empire correctly summarized Lentz as interpreting WIS. STAT. § 802.02(3) to allow "an affirmative defense, such as fraud, to be raised by motion any time before trial even if the defense was not raised earlier in a responsive pleading." However, the Maple Grove court effectively held that the Sympsons were correct to rely on § 802.02(3) and expressly held that Lentz misconstrued the subsection.
¶29 In Maple Grove , our supreme court was asked to address the same question presented in this case, namely whether a defendant's failure to plead an affirmative defense in its responsive pleading forfeited that defense or whether, instead, an affirmative defense can initially be raised by motion. Maple Grove , 386 Wis. 2d 425, ¶37. The Maple Grove court concluded that, the "plain language" of WIS. STAT. §§ 802.02(3) and 802.06(2)(a) "indicates that affirmative defenses, except the ten enumerated defenses [set forth in § 802.06(2) ], must be raised in a responsive pleading."[4] Id. , ¶45.
¶30 Of particular note here, the Maple Grove court explained that Lentz was wrongly decided "because it allows a defendant to initially raise by motion an affirmative defense not listed in § 802.06(2)". Id. , ¶48. Maple Grove stated that our holding in Lentz "cannot be reconciled with the plain statutory language of WIS. STAT. §§ 802.02(3) and 802.06(2)." Id.
¶31 Nonetheless, Empire now requests additional briefing to give it an opportunity to argue that Maple Grove should not be applied here.
¶32 First, Empire argues that Maple Grove does not apply here because Empire's fraud theory is not "a true affirmative defense." Empire suggests that, with further briefing, it can demonstrate that its fraud theory does not fit the definition of an affirmative defense set forth in State v. Watkins , 2002 WI 101, ¶39, 255 Wis. 2d 265, 647 N.W. 2d 244, as follows: "An 'affirmative defense' is ... 'a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim even if all allegations in the complaint are true. ' " (Quoting Black's Law Dictionary 151 (7th ed. 1999)). Empire indicates that its fraud theory is not an affirmative defense, but rather a coverage issue that Empire was unable to raise in a responsive pleading because the fraud was "further fleshed out through a deposition taken after the pleadings were completed." Nothing here suggests to us that we will benefit from further briefing.
¶33 Assuming, without deciding, that the definition in Watkins applies in this civil law setting, even under that definition, Empire's fraud theory is an affirmative defense because it relies on new facts and argument that stand apart from the allegations in the Sympsons' complaint. Empire itself tells us that it learned new facts during discovery. We also observe that the statutory scheme at issue designates fraud as an affirmative defense. WISCONSIN STAT. § 802.02(3) states in pertinent part: "Affirmative defenses . In pleading to a preceding pleading, a party shall set forth affirmatively any matter constituting an avoidance or affirmative defense including ... fraud ...."[5]
¶34 Furthermore, although Empire seems to suggest it did nothing more than raise a "coverage" issue, the briefing we already have makes it clear that no provision in the Empire policy excludes coverage based on Empire's fraud theory. That is, Empire's letter does not suggest any plausible coverage issue that tracks the arguments it has made, as we now explain.
¶35 The only policy exclusion Empire points to excludes the following: "Liability arising out of the use of a 'rental vehicle' which was obtained through a 'rental agreement' based on false, misleading or fraudulent information." This exclusion does not fit Empire's fraud theory because Empire has never alleged that Cade obtained the policy by providing false information. Rather, Empire alleged that Cade obtained the policy based on fraudulent intent to violate the rental agreement.
¶36 We acknowledge that the Empire policy excludes coverage for "[l]oss arising out of the use of a 'rental vehicle' when such use is in violation of the terms and conditions of the 'rental agreement.' " Empire has not relied on this exclusion by arguing that coverage is excluded because Bell's use of the vehicle violated the rental agreement's condition that Cade be the only driver of the Enterprise vehicle. Empire's decision not to pursue this argument makes sense in light of Illinois law that mandates coverage for permissive users. See American Access Cas. Co. v. Reyes , 1 N.E.3d 524, 526-27 (Ill. 2013) (stating that Illinois law, 625 ILCS 5/7-317(b)(2), which is commonly referred to as an omnibus clause, requires that every automobile liability insurance policy insure any person using or responsible for the insured vehicle with the express or implied permission of the insured and the omnibus clause "must be read into every liability policy").
¶37 Second, Empire argues that Maple Grove does not control here because Empire simply did not present its fraud theory as an affirmative defense, but rather raised this issue by filing "its own independent claim seeking declaratory relief." But this argument does not matter unless Empire was seeking a declaration of non-coverage and, as discussed above in ¶¶34-35, to the extent that Empire's fraud theory was raised in the context of coverage, that argument goes nowhere.
¶38 Third, Empire asserts that language in Maple Grove "suggests it has limited application." Empire points to the following sentence in Maple Grove and argues that it shows the fact-specific nature of the holding: "We conclude that noncompliance with the notice of claim statute is an affirmative defense that must be set forth in a responsive pleading." Maple Grove , 386 Wis. 2d 425, ¶3 (emphasis added). Empire seemingly contends that the court's reference to the notice-of-claim affirmative defense means that "the [c]ourt did not discuss the general application of its disagreement with Lentz ." We disagree and can conceive no reason why additional briefing would assist Empire on this topic. The Maple Grove language that Empire points to is indeed a fact-specific application of the supreme court's interpretation of the statutes. But there is no doubt that the statutory interpretation itself runs directly counter to Empire's view, which was nothing more than Empire's reliance on Lentz .
¶39 Fourth, Empire suggests that Maple Grove 's new interpretation of the statutes should not be applied retroactively in light of the "Chevron factors." See Chevron Oil Co. v. Huson , 404 U.S. 97, 106-07 (1971). However, the retroactive application issue only arises when a party who has not pursued an argument seeks to take advantage of a new ruling on the topic. In such situations, there may be unfairness in permitting the party to belatedly raise a new issue. But here the Sympsons raised the very argument that has now been adopted by the Maple Grove court. If not for Maple Grove , our supreme court might have used this case to correct Lentz . There is no more arguable unfairness to Empire here than to the losing party in Maple Grove .
¶40 Empire moved for summary judgment, and summary judgment was granted in its favor, on the basis that the policy could be rescinded on the ground of fraud. Because Empire did not raise fraud as a defense in its responsive pleading, that defense has been forfeited. Accordingly, we conclude that the circuit court erred in granting Empire's motion for summary judgment.
CONCLUSION
¶41 For the reasons discussed above, we affirm summary judgment in favor of American Family, but conclude that the circuit court erred in granting Empire's motion for summary judgment. We remand for further proceedings consistent with this opinion.
By the Court. -Order affirmed; order reversed and cause remanded.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The Sympsons use the phrase "fraud and misrepresentation," but we find no indication that the term "misrepresentation" adds anything substantive to the Sympsons' arguments. Accordingly, we simply refer to fraud.

The Sympsons also alleged a negligent entrustment claim against Bell-Johnson and argue on appeal that the Empire policy provides coverage for that claim. We exclude from our discussion any reference to that claim for purposes of clarity because the basis for that clam is unclear from the facts before us.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Fraud is not one of the ten enumerated defenses in Wis. Stat. § 802.06(2) that may be raised by motion and, therefore, the § 802.06(2) exception does not assist Empire.

To the extent Empire is suggesting that it could not raise its fraud theory in a responsive pleading because Empire first learned of the fraud during discovery, we simply observe that nothing prevented Empire from seeking leave to file an amended answer.